UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| STATE OF INDIANA, STATE OF ARIZONA, STATE OF ARKANSAS, STATE OF GEORGIA, STATE OF KANSAS, COMMONWEALTH OF KENTUCKY, STATE OF LOUISIANA, STATE OF MISSOURI, STATE OF MONTANA, STATE OF OHIO, STATE OF OKLAHOMA, STATE OF SOUTH CAROLINA, STATE OF TEXAS, and STATE OF UTAH, | ) ) ) ) ) ) ) ) ) ) | |
| *Plaintiffs,* | ) ) ) | |
| vs. | ) ) | No. 1:22-cv-00430-JMS-TAB |
| PRESIDENT JOSEPH R. BIDEN, EXECUTIVE OFFICE OF THE PRESIDENT, ATTORNEY GENERAL MERRICK B. GARLAND, U.S. DEPARTMENT OF JUSTICE, SECRETARY OF EDUCATION MIGUEL A. CARDONA, and U.S. DEPARTMENT OF EDUCATION, | ) ) ) ) ) ) | |
| *Defendants.* | ) ) | |

## ORDER

The Plaintiffs are 14 States (including the Commonwealth of Kentucky), some of which have appeared by its respective State's attorney general.[1] They are, in alphabetical order, Arizona, Arkansas, Georgia, Indiana, Kansas, Kentucky, Louisiana, Missouri, Montana, Ohio, Oklahoma, South Carolina, Texas, and Utah (sometimes, collectively, "Plaintiff States"). Their suit seeks relief under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 551 *et seq.*, based on alleged failures by the Defendants properly to respond to a FOIA request contained in a letter, [Filing No.

---

[1] No attorney has appeared for three of the States: Arizona, Arkansas, and Missouri. Only individuals who are not acting in a representative capacity for someone else are permitted to litigate *pro se. See In re IFC Credit Corp.,* 663 F.3d 315, 318 (7th Cir. 2011). Thus, each State must appear by counsel. The Court orders each of these three States to appear by counsel within 14 days. Failure to do so will result in dismissal of that State's claims.

1-9], sent by *some* of the Plaintiffs on October 26, 2021, addressed to President Biden and Attorney General Garland.  The Plaintiffs have sued the Executive Office of the President ("EOP"), President Biden, the United States Department of Justice ("DOJ"), Attorney General Garland, the United States Department of Education ("DOE"), and Miguel Cardona, who is the Secretary of Education.

Defendants Biden, Garland, Cardona, and EOP have filed a motion to dismiss, [Filing No. 43].  Though styled as a "partial" motion to dismiss, the motion seeks the dismissal of all claims against these Defendants.  The motion is partial in the sense that two of the Defendants—the DOJ and the DOE—have not moved to dismiss the claims against them.   The Plaintiffs' response/objection to the motion is signed by only a deputy attorney general for the State of Indiana, who states in a footnote that "Indiana, by its counsel, is submitting a combined response on behalf of all Plaintiff States."  [Filing No. 52 at 1 n.1.]  But Indiana's counsel has not entered an appearance for any of the other States, and no counsel who has appeared for any of the other States signed the response.[2]  Because, as addressed below, the Court finds that the Defendants' arguments are well taken and the motion to dismiss should be granted, the Court chooses not to *summarily* grant the motion against the Plaintiff States other than Indiana.  Instead, it dismisses their claims on the merits for the same reasons it dismisses Indiana's claims against the EOP and the individual defendants.

The Court also notes here that while the Complaint seeks relief by the Plaintiff States to enforce a FOIA request described in the October 26, 2021 letter, *see* Complaint, ¶ 3 [Filing No. 1

---

[2] While the Court ordered the Plaintiff States to file a single joint response, [Filing No. 51], the Court did not excuse any Plaintiff from signing the response.  *See* Fed. R. Civ. P. 11(a) (requiring every filed paper to be signed by a party's attorney of record).

at 3], that letter is not signed or submitted by some of the Plaintiffs, namely, the States of Louisiana, Ohio, Oklahoma, and Utah.  (Three States whose respective attorney general signed the October 26 letter are not Plaintiffs: Alabama, Alaska, and South Dakota.)  It is not clear to the Court why the States that are not signatories to the October 26 letter are Plaintiffs—perhaps there was an addendum to the October 26 letter that is not in the record or the Court has otherwise overlooked an explanation in the record—but the Defendants have not raised the issue.  Because this case is proceeding against the DOJ and the DOE and because the Court has an obligation to inquire about, and assure that it has, subject matter jurisdiction (here, whether any Plaintiff may lack standing because it never made the FOIA request upon which the lawsuit rests),[3] the Court requires the States of Louisiana, Ohio, Oklahoma, and Utah to each SHOW CAUSE within 14 days as to why they should not be dismissed for lack of standing to seek relief under FOIA given there is no evidence they made the FOIA request that is the basis of this lawsuit.

The Court now addresses the merits of the Defendants' motion to dismiss after setting forth its familiar standard of review and describing the Complaint's factual allegations.

# I.
## STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief.  The Federal Rules of Civil Procedure require that a complaint provide each defendant with "fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007).  In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff.  *Alarm Detection Sys., Inc. v. Village of*

---

[3] A court does not have subject matter jurisdiction over claims by a plaintiff that does not have standing.  *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2203-04 (2021).

*Schaumburg,* 930 F.3d 812, 821 (7th Cir. 2019).  A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain(s) sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly,* 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal,* 556 U.S. at 768 (citing *Twombly,* 550 U.S. at 555).  Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level."  *Munson v. Gaetz,* 673 F.3d 630, 633 (7th Cir. 2012).  This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

## II.
### Background

The Plaintiffs' Complaint alleges the following, which the Court accepts as true at this time.

The Plaintiff States seek to compel the production of records responsive to a FOIA request made by letter dated October 26, 2021.  [Complaint, ¶ 3, Filing No. 1.]  The October 26 letter, [Filing No. 1-9], seeks records concerning or underlying a Memorandum issued by Attorney General Garland dated October 4, 2021, regarding alleged threats made to school board members throughout the United States.  The Memorandum indicates that it is based at least in part on information provided by the National School Boards Association ("NSBA") via letter dated September 29, 2021, addressed to President Biden.  The NSBA's September letter was sent after the NSBA (through its Acting Executive Director and other agents) had "talks over . . . several weeks with White House staff" and after DOJ officials were also "involved in discussions with the

NSBA and the White House." [Filing No. 1-9 at 2 and 3.] The Plaintiff States allege that the NSBA's September letter "was drafted by individuals in the Federal Government" associated with DOJ, DOE, and the Executive Office of the President, who were "working with" the NSBA. [Filing No. 1 at 5, para. 14.] They note that NSBA documents refer to a meeting of NSBA representatives and "White House staff" on September 14, 2021, and to a request by DOE Secretary Cardona that the NSBA "provide information to the White House." [Filing No. 1 at 8 and 9, ¶¶ 20-21.] The Complaint also alleges that persons within the DOJ must have been coordinating with the White House and/or the DOE because Attorney General Garland's October 4 Memorandum was so quickly issued on the heels of NSBA's September 29 letter to President Biden. [Filing No. 1 at 8, ¶ 20.]

After AG Garland issued the October 4 Memorandum, accusations were made that the Memorandum accused American parents of domestic terrorism and was intended to chill the exercise of their rights to address local school boards in violation of the First Amendment. The NSBA received numerous complaints about its role in providing information on which the Memorandum relied. Eventually, on October 22, 2021, the NSBA Board of Directors (which had not been consulted about NSBA's September letter) sent a message to its members that "repudiated" the September 29 letter from the NSBA to the President, stating that the Board regretted and apologized for the letter and adding that "there was no justification for some of the language included in [the September 29 letter]." [Filing No. 1-9 at 2.]

The Plaintiffs' October 26 letter addressed to President Biden and AG Garland states that it is a "request under the Freedom of Information Act" for certain information described in paragraphs labeled 2A through 2F. Paraphrased slightly, these paragraphs ask for the following information:

"[A]ll communications of any federal officials or agencies to or from the NSBA . . . relating to 'the proceedings leading to" the NSBA's September 29 letter to the DOJ, including but not limited to:

A. Correspondence (whether written or sent by text or other electronic means)[4] "to or from any individual employed by or affiliated with the White House or White House related entities such as the Domestic Policy Council."

B. Correspondence with the NSBA "to or from any individual employed by or affiliated with" the DOJ, including AG Garland, Deputy AG Monaco, Associate AG Gupta, Assistant AG Clark, and any of their "front office staff," including deputies, senior advisors, and senior counsel.

C. Correspondence with the NSBA "to or from any individual employed by or affiliated with" the DOE, including Secretary Cardona, Deputy Secretary Marten, Acting General Counsel Leheny, Assistant Secretary for the Office of Civil Rights Llhamon, and any of their "front office staff," including deputies, senior advisors, and senior counsel.

D. All documents (including emails, memoranda, or any other materials) "prepared by any individual employed by or affiliated with the United States government" relating to a written statement by an NSBA employee that the NSBA had been in talks with White House staff who had requested "additional information on some of the specific threats," which led to the NSBA including in its September letter to President Biden "details [about] many of the incidents that have been occurring."

---

[4] Each request for "correspondence" extends to any written record including those via text or other electronic means.

E. All drafts, discussion copies, memoranda, or other materials "exchanged with the NSBA . . . and any federal government employees," leading to any of the contents of the NSBA's September letter to President Biden.

F. Notes, memoranda, internal emails, or any other documents or materials "prepared by any individual employed by or affiliated with the United States government discussing, summarizing, or memorializing any of the above referenced communications," which are NSBA's September 29 and October 22, 2021 letters and AG Garland's October 4, 2021 Memorandum.

The DOJ's Office of Information Policy responded to the October 26 FOIA request via letter dated December 17, 2021, stating that it had been forwarded to DOJ's Civil Rights Division for processing and would be processed as soon as possible.  [Filing No. 1-12.]  The Civil Rights Division in turn sent a letter dated January 5, 2022, stating that the FOIA request is being processed.  [Filing No. 1 at 12, ¶ 27; Filing No. 1-13.]  The DOE responded to the October 26 FOIA request on November 30, 2021, and sought clarification about certain matters, which was provided.  [See Filing No. 1-14; Filing No. 1-15.]  Neither the White House nor the Executive Office of the President made any response to the States' October 26 FOIA request.  [Filing No. 1, Complaint, ¶ 29.]

The Complaint alleges that each Defendant has violated FOIA because he or it failed to meet a 30-day statutory deadline to respond and provide the States with a description of the records that will be provided (and still none has properly complied with FOIA).[5]  The "States [have filed] this lawsuit to compel the Defendants to comply with the FOIA."  [Filing No. 1 at 13, ¶ 32.]

---

[5]The DOJ and DOE have filed status reports with the Court about their production of documents in response to the Plaintiff States' FOIA request.  See Filing No. 56; Filing No. 58; Filing No. 60.

## III.
### DISCUSSION

The Defendants contend that the claims against President Biden, Attorney General Garland, and Secretary Cardona must be dismissed because they are individuals and not "agencies" subject to FOIA.  With respect to defendant "Executive Office of the President," the Defendants argue that the Plaintiffs' FOIA claims fail because (1) the EOP as a whole is not subject to FOIA, (2) the only group or unit within the EOP that was identified by the Plaintiffs in their FOIA request—the Domestic Policy Council—is not an "agency" subject to FOIA, and (3) the Plaintiffs did not comply with regulations that dictate how FOIA requests to particular groups or units within the EOP that may qualify as a FOIA "agency" must be made.  As addressed in this Order, the Defendants' arguments are in large part grounded in the Supreme Court's decision in *Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136 (1980).  The Plaintiffs' response inexplicably ignores the *Kissinger* case; the response neither acknowledges the decision nor its application as controlling authority to their Complaint.  Instead, their response is two-fold: (1) they assert, without citation to any authority, that the EOP has an obligation to determine whether any unit within the EOP that may be an "agency" subject to FOIA has any documents that fall within the Plaintiffs' FOIA request and (2) they assert that the Federal Records Act, 44 U.S.C. § 2901 *et seq.*, may be a source of relief against President Biden, Attorney General Garland, and Secretary Cardona because the Plaintiffs have "reasonable concerns addressed to record keeping and retention by named agency heads, particularly Attorney General Garland and Secretary Cardona."  [Filing No. 52 at 13.]

In reply, the Defendants argue that the Plaintiffs have conceded by acquiescence that the individual defendants are not subject to FOIA because they are not "agencies."  With respect to

EOP, the Defendants reply that binding regulations and case law require a FOIA requester to be specific about the unit or group within the EOP from which it is seeking records and that it is undisputed the Plaintiff States did not do so but instead directed the request to the "White House" as a whole.  The Defendants further contend that the Plaintiff States conceded that the only White House-related unit or group mentioned in the FOIA request (the Domestic Policy Council) is not an agency subject to FOIA.  In reply to the Plaintiff States' suggestion in the response brief that the Federal Records Act may apply in some manner, the Defendants contend that any such claim is not supported under the law or by any fact in the Complaint or in the response brief.  As all agree, the Complaint relies wholly on FOIA and with laser focus addresses only the Defendants' alleged actions or inactions with respect to producing records that may be required under FOIA. As addressed *infra,* even if the Court considers whether any fact or inference from fact described by the Plaintiffs in the response brief states a right to relief under the Federal Records Act, it determines that any such claim against President Biden, Attorney General Garland, or Secretary Cardona does not rise above the speculative level or possibly state a right to relief under that statute.[6]

---

[6]In deciding a motion to dismiss, a court can consider new facts and inferences from them set forth by a plaintiff in his response brief even though not contained in the complaint so long as the new facts are consistent with the complaint's allegations.  *Smith v. Dart,* 803 F.3d 304, 311 (7th Cir. 2015).  While it's a stretch to the breaking point to deem the Plaintiff States' suppositions in the response brief about how the Federal Records Act might be violated as consistent with the Complaint's focus on the Defendants' actions or inactions related to FOIA obligations, the Court will address why no Federal Records Act claim has been or can be stated against the moving Defendants.

**A.   Only Agencies are Subject to FOIA.**

FOIA, codified at 5 U.S.C. § 551 *et seq.*, requires—as applicable to this case—an "agency" to make its records available upon reasonable request unless a statutory exemption to disclosure applies.  The pertinent section reads:

> (3)(A) [Except with respect to certain records required to be made widely available on line or records exempt from disclosure], each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

5 U.S.C. § 552(a)(3)(A).  In its original enactment in 1966, the term "agency" was defined in the same way it is used in the Administrative Procedure Act, described only as "each authority of the Government of the United States, whether or not it is subject to review by another agency," subject to certain exceptions that are not relevant to this case.  *See* 5 U.S.C. § 551(1); *Main Street Legal Services, Inc. v. National Security Council,* 811 F.3d 542, 546 (2nd Cir. 2016) (discussing history of "agency" definition).  In 1971, the District of Columbia Circuit Court of Appeals decided a seminal case, *Soucie v. David,* 448 F.2d 1067 (D.C. Cir. 1971), addressing the scope of the term agency under FOIA as applied to a government unit, the Office of Science and Technology, that had created a report for the purpose of advising the President about the efficacy of a certain military defense system.  The *Soucie* court determined that if a government unit's sole function is to "advise and assist the President," then it is deemed a part of the President's staff and not an agency subject to FOIA.  *Id.* at 1075.  But if the government unit engages in activities and functions that are independent of the President, that unit is an agency whose records are subject to production on request under FOIA unless a specific statutory exemption applies to a requested record.  *Id.*  The

D.C. Circuit Court of Appeals is recognized by other courts as particularly expert in FOIA cases,[7] which are frequently litigated in its jurisdiction given federal agencies' geographic presence there, and *Soucie's* framework for determining whether any particular unit or group associated with the EOP or the "White House" is an agency subject to FOIA is still followed.  Most importantly, the framework was adopted by the Supreme Court in *Kissinger*, 445 U.S. 136 (1980).

By the time *Kissinger* was decided, FOIA's definition of "agency" in 5 U.S.C. § 551(1) was supplemented by a new provision stating that "agency" under Section 551(1) "includes any executive department . . . or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f)(1).  The Supreme Court ruled that the phrasing "Executive Office of the President" in the agency definition does not include "the Office of the President."  The Court explained, based on legislative history (grounded in the *Soucie* decision), that "'the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President' are not included within the term 'agency' under the FOIA."  445 U.S. at 156.  Based on this framework, the Court determined that certain records created by Henry Kissinger while serving in his role as an assistant to the President within the White House—as opposed to the period he served as the nation's Secretary of State—were not the records of any agency, and thus not subject to FOIA.  *Id.*  The Court stated that because the FOIA request at issue "was limited to a period of time in which Kissinger was serving as Assistant to the President," the requested records "were not 'agency records' when they were made."  *Id.*  It bolstered the same point by noting that the

---

[7] *See Main Street Legal Services, Inc., v. National Security Council,* 811 F.3d 542, 547 (2nd Cir. 2016) (noting the D.C. Circuit's "considerable experience" in deciding whether particular government units are "agencies" subject to FOIA).

records were not the records of any FOIA agency because they were created by Mr. Kissinger when he "had acted in his capacity as a Presidential advisor, only." *Id.*

As the Defendants point out, separation of powers principles and concerns are the foundation underlying the Supreme Court's distinction (construing Congress's intent in FOIA) between units or groups associated with the Executive that are not FOIA agencies and those that are. *See Judicial Watch, Inc. v. U.S. Secret Service,* 726 F.3d 208, 216 (D.C. Cir. 2013) (Congress's exemption from FOIA agency status of the President, his immediate personal staff, and units within the Executive Office whose sole function is to advise and assist the President was to "avoid serious separation-of-powers concerns.")

The Plaintiff States have cited no cases reflecting any deviation from the *Kissinger/Soucie* framework for determining whether a particular unit or group associated with the EOP is an agency subject to FOIA obligations and judicial remedies. Instead, not surprisingly because *Kissinger* is a Supreme Court decision binding on all the lower courts, the framework lives on and courts determine whether an EOP unit or group is a FOIA agency based on whether it possesses "substantial independent authority" from the President and has functions independent of its role in providing advice to the President or whether its essential function is to provide advice and assistance to the President. *See Meyer v. Bush,* 981 F.2d 1288, 1292-93 and 1297 (D.C. Cir. 1993) (deciding that President Reagan's Task Force on Regulatory Relief was not a FOIA agency because it "was not a body with 'substantial independent authority' to direct executive branch officials."); *CREW v. Office of Administration,* 566 F.3d 219, (D.C. Cir. 2009) (deciding that because the Office of Administration "performs only operational and administrative tasks in support of the President and his staff," it therefore "lacks substantial independent authority" from the President and is not an agency subject to FOIA).

### 1. Whether Individuals are Proper FOIA Defendants

The Plaintiff States have no real answer to the Defendants' argument that because FOIA imposes obligations upon and authorizes relief against only an "agency," the Complaint fails to state a claim under FOIA against the three individual defendants. *See also* 5 U.S.C. § 552(a)(4)(B), which grants jurisdiction to district courts to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." The Plaintiff States assert instead that dismissal of the individual defendants is "premature" because their FOIA request was broad enough to "apply to individuals . . . within the White House not exempt from FOIA." [Filing No. 52 at 3.]  That assertion is a non-response; directing a FOIA request to an individual or entity that is not an agency subject to FOIA cannot create a viable claim against an individual under FOIA.  As this Court's preceding discussion makes clear, it has long been established that (1) only agencies are subject to FOIA and (2) with respect to the Executive branch, the President's staff and advisors are not FOIA agencies, including groups or units "whose sole function is to advise and assist the President."  *See Kissinger,* 445 U.S. at 156.

The Plaintiff States also assert that FOIA imposes record keeping requirements and thus the individual defendants are properly named with respect to any relief based on FOIA's record keeping requirements.  [Filing No. 52 at 12.]  The Plaintiffs do not, however, cite to any provision within FOIA that imposes any record keeping requirements, let alone cite any FOIA provision that imposes any such obligation on or creates relief against an individual.  Further, the lone case they cite for the proposition that FOIA imposes record keeping requirements, *Main Street Legal Services,* 811 F.3d 542, has nothing to do with any record keeping requirements, and it reinforces the principle that "FOIA applies only to federal agencies"; not individuals.  811 F.3d at 546.  In *Main Street,* the Second Circuit Court of Appeals examined whether the National Security Council

is an agency subject to FOIA or instead not subject to FOIA because it does not possess substantial independent authority from the President. *Id.* at 543. In its introductory "30,000 foot level" description of FOIA, the court stated that "FOIA establishes record retention and disclosure requirements for federal agencies," citing generally to 5 U.S.C. § 552. 811 F.3d at 544. But the *Main Street* court (and the Plaintiff States) did not cite any language within any portion of Section 552 (or other parts of FOIA) that establishes "record retention" (or "record keeping," the term the Plaintiff States use in the response brief) requirements and no issue was raised in *Main Street* about any agency's violation of any purported FOIA record retention requirement. Furthermore, the Supreme Court has addressed whether FOIA imposes record keeping requirements—in *Kissinger*, the case the Plaintiff States have ignored—and ruled that it does not. The Court found that an agency's possession or control of a record is a "prerequisite to triggering any duties under the FOIA," 445 U.S. at 151, and FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." *Id.* at 152.

This Court is persuaded, based on FOIA's clear language limiting its reach to agencies and the myriad case law cited by the Defendants holding that a FOIA cause of action does not exist against an individual, whether named in an official capacity or not, that the Plaintiffs' Complaint fails to state a claim against the individual defendants on which relief may be granted under FOIA. The Plaintiff States have not attempted to distinguish the case law cited by the Defendants or show why the rationale underlying the conclusion that a FOIA cause of action does not exist against an individual is not persuasive and should not be followed by this Court. *See, e.g., Martinez v. Bureau of Prisons,* 444 F.3d 620, 624 (D.C. Cir. 2006) ("[N]o cause of action exists that would entitle [plaintiffs] to relief from [individual defendants] under . . . FOIA."); *Petrus v. Bowen,* 833 F.2d

581, 582 (5th Cir. 1987) (district court properly dismissed individual defendants because "no cause of action exists that would entitle [the plaintiff] to relief from them under . . . FOIA."); *Boyd v. Trump,* 478 F. Supp. 3d 1, 3-4 (D.D.C. 2020) (dismissing FOIA claims against the President, the Attorney General, and other individual government officials because a FOIA claim is proper against only a federal government agency); *Voinche v. Obama,* 744 F. Supp. 2d 165, 172 (D.D.C. 2010) (internal citation omitted) (dismissing FOIA claims against former President Bush and President Obama "because 'no FOIA claim may be asserted against individual federal officials.'"); *Santini v. Taylor,* 555 F. Supp. 2d 181, 184 (D.D.C. 2008) (FOIA plaintiff's naming as defendants government employees in their official capacities did not state claims for relief under FOIA because only an agency is a proper defendant under FOIA).

Accordingly, President Biden, Attorney General Garland, and Secretary Cardona are entitled to dismissal of the FOIA claims against them.

2. *Whether "Executive Office of the President" is Entitled to Dismissal*

As described previously, the Defendants argue that the Complaint does not state a claim to relief under FOIA against the EOP because (1) the EOP as a whole is not itself an agency subject to FOIA, and (2) applicable regulations require a FOIA requester to identify the specific government unit or group within the EOP from which records are sought, a requirement that the Plaintiff States indisputably did not follow.  Finally, the Defendants contend that the only White House-related or EOP-related unit or group identified in the FOIA request—the Domestic Policy Council—is not a FOIA agency as a matter of law.  For all of these reasons, the Defendants conclude that the Court must dismiss defendant EOP because the Complaint does not state a claim under FOIA against the EOP.

In response, the Plaintiff States assert that it is "premature" to dismiss the EOP as a defendant because they simply do not know which individuals or groups or entities associated or affiliated with the White House may have been involved in discussions or activities connected with the NSBA's September 29 letter to President Biden or with AG Garland's October 4 Memorandum.  The Plaintiffs do not contest, however, that the Domestic Policy Council is not a FOIA agency.  They also do not distinguish the Defendants' cases which hold that the EOP is not a proper defendant in a FOIA case or that a FOIA plaintiff is obligated to have made its records request to a particular group or entity, or at least identify the particular group or entity from which records are sought, in compliance with applicable regulations.  As addressed below, this Court finds that the Defendants' arguments are well taken and the EOP is entitled to dismissal because the Complaint does not state a claim on which relief may be granted under FOIA against the EOP.

As the Court discussed at the outset of its analysis, FOIA is an "agency"-based statutory scheme.  It requires "an agency," upon a request that reasonably describes records being sought and "is made in accordance with published" rules stating the procedures to be followed in making the request, to "make the records promptly available."  5 U.S.C. § 552(a)(3)(A).  And it grants jurisdiction to a court to enjoin "the agency" from improperly withholding requested "agency records" and to order their production.  5 U.S.C. § 552(a)(4)(B).  Further, while since 1974, FOIA has contained language at Section 552(f)(1) that the term "agency" includes an "executive department . . . or other establishment in the executive branch of the Government (including the Executive Office of the President)," binding Supreme Court authority in *Kissinger* provides that "agency" does not include groups or units that are properly understood as part of the personal "Office of the President," which are those groups or units whose sole function is to advise and assist the President.  That is why the cases engage in analysis, sometimes painstakingly, about

whether any particular Executive Office-related group or unit to which a FOIA request was directed and has been sued for failing to comply with FOIA is or is not a FOIA agency.  *E.g., Main Street,* 811 F.3d 542 (analyzing whether the National Security Council is a FOIA agency and deciding that it is not); *CREW,* 566 F.3d 219 (analyzing whether the Office of Administration is a FOIA agency and deciding that it is not); *Meyer v. Bush,* 981 F.2d 1288 (analyzing whether the Task Force on Regulatory Relief (now disbanded) was a FOIA agency and deciding that it was not).

The Plaintiff States' October 26 FOIA request references only one group or unit (the Domestic Policy Council) related to the President or what might be considered part of the EOP, and they describe it as a "White House" affiliated or related entity.  Their request otherwise refers to the White House as a whole or even more generally to "any federal government employee" or "federal officials" or "federal agencies."   Nowhere does the October 26 FOIA request even mention the term "Executive Office of the President."  *See, e.g.,* paragraph 2A of the FOIA request, [Filing No. 1-9 at 3], which seeks:

> [A]ll communications of any federal officials or agencies to or from the NSBA . . . including but not limited to . . . correspondence with the NSBA to or from any individual employed by or affiliated with the White House or White House related entities such as the Domestic Policy Council.

*See also* paragraph 2D (seeking all documents prepared by any individual employed by or affiliated with the United States government "relating to" an NSBA email referencing talks with White House staff); paragraph 2E (seeking all documents exchanged with the NSBA and "any federal government employees" in connection with what the creation of the NSBA's September 29, 2021 letter).

a.   Whether the Domestic Policy Council is an FOIA Agency

The Defendants contend that the Domestic Policy Council is not a FOIA agency because "it is a component within the White House Office that advises on and coordinates the President's domestic policy agenda," citing to various statements from government websites describing the Council as one made up of policy staff within the White House Office.  [Filing No. 43-1 at 21.] They also rely on the contents of the Executive Order which created the Domestic Policy Council in 1993, [Filing No. 43-1 at 15], information routinely accepted as particularly persuasive about an entity's status as a FOIA agency or not.  *E.g., Meyer v. Bush,* 981 F.2d at 1294 (noting that an Executive Order creating a unit or group associated with the Executive is the "most important indication" of its role and functions.  The Plaintiff States do not challenge the Court's power to take judicial notice of the website statements or the Executive Order (a request made by the Defendants in their opening brief) nor the Defendants' showing that as a component of the White House Office whose purpose is to provide advice about and coordinate the President's policy agenda, the Domestic Policy Council is not a FOIA agency.  Further, it was the Plaintiff States' burden to demonstrate that a group or unit associated with the Executive is a FOIA agency, *Main Street,* 811 F.3d at 544 (where dispute about whether the entity from which records were requested is an agency subject to FOIA, the burden is on the party seeking the information), and they have provided nothing in furtherance of carrying that burden. The Court is satisfied, based on the Defendants' showing and the lack of contrary information from the Plaintiff States, that the Domestic Policy Council is part of the "Office of the President," does not possess substantial independent authority vis-à-vis the President, and is therefore not an agency under FOIA.

b.  <u>EOP is Not an Agency to Which FOIA Request May be Made</u>

With respect to the EOP as a whole, the Court concludes that it is not a FOIA agency from which records are property requested and thus not subject to suit.  As explained below, the Court reaches this conclusion based on the structure of FOIA, a regulation regarding the making of FOIA requests within the EOP, and relevant case law.

The definition of "agency" in FOIA is reasonably read to require a request for records to be made specifically to an entity, group, or unit within the EOP—and not to the EOP as some broad entity that includes all myriad groups and units within its entire realm.  Agency is defined to "include[] any executive *department*" or other "*establishment*" in the "executive branch (including the Executive Office of the President)," 5 U.S.C. § 552(f)(1) (emphasis added), thus indicating that an "agency" can only be a functional unit such as a "department or other establishment" within the broader executive branch including the EOP.  A FOIA agency is not simply the entire executive branch itself or the EOP itself.  Moreover, even if one did not find the statutory language clear that only a particular department or other establishment within the broader executive branch including the EOP can be an agency, applicable regulations are clear that only a particular unit within the EOP is a proper entity to which a FOIA request for its documents can be made.  Further, case law is unanimous that the EOP is not a proper FOIA defendant.

FOIA requires that a request for records be made in accordance with published rules describing the procedures that a request must follow.  5 U.S.C. § 552(a)(3)(A).  There is a regulation regarding applicable procedures with respect to the EOP.  *See* 3 C.F.R. § 101.1.  It provides that unless specific rules have otherwise been adopted for specific entities within the EOP, the applicable procedures are those adopted by the Office of Management and Budget at 5

C.F.R. Ch. III, and requests for information from entities within the EOP "should be submitted directly to such entity."

Apart from naming the Domestic Policy Council as an entity from which records were being sought, the Plaintiff States' FOIA request does not seek records from any other specific EOP entity or group.  Their excuse for not doing so is that they didn't know all entities or groups (if there even are any apart from the Domestic Policy Council) associated with the White House (or EOP) that may have records relating to the NSBA's September 29 letter to President Biden and AG Garland's October 4 Memorandum.  But the inability—or decision not—to direct one's FOIA request to an executive agency or group(s) from which records are sought is not an excuse from compliance grounded in any statute, regulation, case law, or any other authority. This Court is loath to determine that a FOIA request addressed generically to the President and the White House for all documents within the entire executive (or at least those involving anyone associated with the White House) is proper under FOIA when applicable regulations state it's not.  Further, FOIA would likely be unworkable if all a requester were required to do is ask for records from the entire EOP.  Such a protocol would place the burden on some entity (the Plaintiffs have not suggested who that would be) to evaluate the agency status of every unit or group within the EOP and then investigate whether every such agency unit/group possesses any responsive records.

Indeed, when courts have examined the issue about whether the EOP as a whole is an agency within the meaning of FOIA and subject to suit, they have answered no.  In *United States v. Espy,* 145 F.3d 1368 (D.C. Cir. 1998), the D.C. Circuit Court of Appeals addressed whether a defendant who lied to the President's Counsel and Chief of Staff could be convicted under a criminal statute that forbade the making of false statements to any "department or agency of the United States."  The government argued that the Counsel and Chief of Staff could be deemed part

of the EOP, which could be deemed an agency within the meaning of the criminal statute.  The defendant, on the other hand, argued by analogy to FOIA.  The *Espy* court was unequivocal that if the FOIA definition applied, then the criminal statute did not cover the defendant's conduct because "it has never been thought that the whole Executive Office of the President could be considered a discrete agency under FOIA."  145 F.3d at 1373.

In *International Counsel Bureau v. CIA,* 2010 WL 1410561 (D.D.C. Apr. 2, 2010), the FOIA requester sought all records from the EOP relating to the federal government's policies about or negotiations regarding Guantanamo Bay.  *Id.*, at *1.  He submitted his request to the federal Office of Administration as a proxy for the entire EOP, deeming it the "natural and logical point of contact for a request" directed to the EOP as a whole.  The district court granted the EOP's motion to dismiss the FOIA claims brought against it, finding that the EOP as a whole is "not a discrete agency under FOIA."  The court also emphasized that a FOIA requester must make his request "directly to the specific agency within the Executive Office of the President that is the target of the request," which the plaintiff had not done.  *Id.*  Finally, the court noted that the Office of Administration was not a FOIA agency, and by directing his records request to the Office of Administration, the plaintiff also had failed to comply with governing regulations.  *Id.*  These conclusions apply readily to this case.

With respect to the EOP or any unit within it, the Plaintiff States submitted their FOIA request to President Biden himself or, reading the FOIA letter more broadly, to the "White House." Neither possibly is a FOIA agency—if anything, they epitomize the "Office of President" that the Supreme Court in *Kissinger* ruled was unequivocally not a FOIA agency.  Thus, like the plaintiff in *International Counsel,* the Plaintiff States did not direct their request to any FOIA agency.  Even reading the Plaintiff States' FOIA request more generously as having specifically sought records

from the EOP, the EOP is "not a discrete agency under FOIA." *Espy,* 145 F.3d at 1373; *International Counsel,* 2010 WL 1410561, at *1. Further, like the *International Counsel* plaintiff, the Plaintiff States did not direct their request to a specific unit or department within EOP as the target of the request as regulations require. *See also Voinche v. Obama,* 428 Fed. App'x. 2, 3 (D.C. Cir. Apr. 1, 2011) (unpublished) ("[T]he district court correctly held that the [FOIA] claims against the Executive Office of the President and the Office of Administration are properly dismissed because neither is an agency under FOIA."); *Calhoun v. Department of Justice,* 693 F. Supp. 2d 89, 91-92 (D.D.C. 2010), *aff'd,* 2010 WL 4340370 (D.C. Cir. 2010) (in the absence of a properly made FOIA request in compliance with regulations, a plaintiff's FOIA claim must be dismissed; it's equivalent to having failed to exhaust administrative remedies); *Tyree v. Hope Village, Inc.,* 677 F. Supp. 2d 109, 111 (D.D.C. 2009) (same).

This Court concludes—in line with the structure of FOIA Section 552(f)(1), defining agency, FOIA Section 552(a)(3)(A), requiring compliance with regulations about procedures for making requests, applicable regulatory authority (3 C.F.R. § 101.1) requiring a FOIA request to an EOP entity to be directed to a specific entity, and case law—that the EOP as a whole is not a FOIA agency and thus not a proper defendant. The EOP is therefore entitled to dismissal under Rule 12(b)(6) because the Plaintiff States have not stated a claim upon which relief under FOIA may be granted against it.

### B. The Federal Records Act

In a last gasp to save claims against President Biden, Attorney General Garland, and Secretary Cardona, the Plaintiffs' response brief relies on the Federal Records Act, 44 U.S.C. § 2901 *et seq.* ("FRA"). The Plaintiff States contend that (1) one section of the FRA, 44 U.S.C. § 3101, imposes records management obligations on heads of each federal agency, (2) those

obligations can be enforced "by private litigants where the agency or its employees fail to fulfill their records retention duties," and (3) the States have reasonable concerns addressed to record keeping and retention by named agency heads, particularly Attorney General Garland and Secretary Cardona." [Filing No. 52 at 13.]

     1.  *President Biden*

Before analyzing these contentions and whether any claim has been stated under the Federal Records Act with respect to agency heads AG Garland and Secretary Cardona, the Court notes that the Plaintiff States have included no allegations in their Complaint or in their response to the Defendants' dismissal motion that President Biden is the head of a federal agency, has record keeping obligations under the FRA, has done anything inconsistent with record keeping obligations under the FRA, or is even subject to suit under the FRA. While the Plaintiff States mention in the response the existence of the Presidential Records Act, 44 U.S.C. § 2201 *et seq.*, that's all they do with respect to that statute—mention it.  [Filing No. 52 at 12.]  They make no allegations about President Biden with respect to it.  Thus, without further belaboring the issue, the Court determines that the Plaintiff States have failed to state any claim against President Biden under the Federal Records Act or any other statute.  *See also Armstrong v. Bush,* 924 F.2d 282, 286 n.2 and 288 (D.C. Cir. 1991) (the President and the Executive Office of the President are not subject to the FRA, and there is no private right of action to enforce obligations of the President or the EOP under the Presidential Records Act).

     2.  *Attorney General Garland and Secretary Cardona*

The FRA provision cited by the Plaintiff States, 44 U.S.C. § 3101, provides in pertinent part that "[t]he head of each Federal agency shall make and preserve records containing adequate and proper documentation of the . . . functions, policies, [and] decisions of the agency and designed

to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities."  The Plaintiffs assert in their response that they may have claims against AG Garland, as the agency head of the DOJ, and/or Secretary Cardona, as the agency head of the DOE, because they have "reasonable concerns" about whether persons within the DOJ or DOE who were involved in communications or the exchange of documents or information with the NASB (leading to the NASB's September 29, 2021 letter to President Biden and to AG Garland's issuance of the October 4 Memorandum) used unofficial, private email accounts or other non-governmental electronic means of communications.  [Filing No. 52 at 14; Filing No. 52 at 15.]  Their concerns—which are wholly speculative—do not, however, make a claim against either AG Garland or Secretary Cardona for purported violations of any provision of the FRA.  The two cases they cite as authority for bringing claims based on alleged violations of FRA record keeping or retention obligations do not allow a private action against the agency head to produce records.

In the first case, *Armstrong v. Bush,* 924 F.2d 282 (D.C. Cir. 1991), the D.C. Circuit Court of Appeals addressed the type of claim that may be brought by a private plaintiff based on recordkeeping obligations under the FRA.  The *Armstrong* plaintiffs alleged that staff employees within the National Security Council umbrella were destroying or threatening to destroy documents (generally, computer backup tapes) as the Reagan administration was winding down, and they sued to enjoin the destruction.  The court explained that some agency action (or inaction) in connection with obligations under the FRA are subject to judicial review in a private lawsuit but some are not.  If a claim concerns the adequacy of the recordkeeping policy established by an agency, a private claim can be brought under the Administrative Procedure Act for "judicial review of the adequacy of an agency's recordkeeping guidelines and directives" established pursuant to

the FRA.  *Id.* at 292.  But, if a claim concerns purported failures to comply with an agency's recordkeeping guidelines, there is no basis for a district court to entertain such a claim.  Instead, the FRA prescribes an administrative regime of enforcement.  924 F.2d at 294 (under the FRA, "Congress . . . decided to rely on administrative enforcement, rather than judicial review at the behest of private litigants, to prevent the destruction or removal of records."  *Id.*  The court emphasized that any claim based on the alleged improper destroying or removing of government records—which is the kind of supposition the Plaintiff States have made in the response, *i.e.,* that DOE or DOJ employees possibly communicated using non-government means such as private email accounts—is not a viable cause of action under the FRA:

> Because it would clearly contravene [the statute's] system of administrative enforcement to authorize private litigants to invoke federal courts to prevent an agency official from improperly destroying or removing records, we hold that the FRA precludes judicial review of such actions.

*Id.* at 294.

The *Armstrong* court noted the possibility of one private remedy under the FRA—a suit requiring an agency to fulfill a statutory duty to notify Congress and the Attorney General that records are being destroyed or removed in violation of agency guidelines.  *Id.* at 295.  Nothing in the Plaintiff States' Complaint or the response to the dismissal motion suggests they are seeking any such relief or have any grounds to do so.

In the Plaintiff States' second case, *American Oversight v. United States Dep't. of Veterans Affairs,* 498 F. Supp. 3d 145 (D.D.C. 2020), the district court merely reiterated the D.C. Circuit Court of Appeals' finding in *Armstrong* that a private suit brought via the Administrative Procedure Act could seek to require an agency to notify Congress and the Attorney General if the agency's records are being destroyed or removed in violation of agency guidelines.  *Id.* at 149 (as provided in *Armstrong,* if an agency head and the National Archivist refuse to initiate an

administrative enforcement action against agency employees or officials to recover records that were not properly preserved within or forwarded to official government accounts, "then private litigants may sue under the Administrative Procedure Act to require them to do so.")  As noted, there is nothing in the Complaint or in the Plaintiffs' response to the dismissal motion suggesting they are seeking any such relief or have any grounds to do so.

   In summary, the Court finds that the Plaintiff States have failed to allege any facts or reasonable inferences from them either in their Complaint or the response to the dismissal motion giving rise to a plausible private right of action against Attorney General Garland or Secretary Cardona for violation of any provision of the FRA.

## IV.
### CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss, [43], is GRANTED.  The Plaintiff States' claims against President Biden, the Executive Office of the President, Attorney General Garland, and Secretary Cardona are DISMISSED under Fed. R. Civ. P. 12(b)(6).  The Court directs the Clerk to terminate them as Defendants.

This case remains pending against the Department of Justice and the Department of Education.

The States of Arizona, Arkansas, and Missouri must each appear by counsel within 14 days.  Failure to do so will result in their termination as Plaintiffs.  Because these States have not appeared by counsel, they will not receive a copy of this Order via the Electronic Case Filing system. The Court therefore Orders counsel for the State of Indiana—who purported to file the response brief for these States—to provide appropriate notification to them of this Court's Order that they appear by counsel.

The States of Louisiana, Ohio, Oklahoma, and Utah must each SHOW CAUSE within 14 days as to why they should not be dismissed for lack of standing to seek relief under FOIA given there is no evidence they made the FOIA request that is the basis of this lawsuit.

Date: 1/20/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

27